# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SONYA M. LANDESS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00306 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.      Introduction

Plaintiff Sonya M. Landess brings this case challenging the Social Security

Administration's denial of her applications for Disability Insurance Benefits and

Supplemental Security Income.  She asserted in her applications that she was under a

benefits-qualifying disability – starting on June 1, 2010 – due to thyroid cancer, major

depression, lower-back pain, excess bleeding, and nerve pain in her legs and feet.

(*PageID#s* 136, 284).  Administrative Law Judge (ALJ) Scott R. Canfield denied

Plaintiff's applications based on his conclusion that her impairments did not constitute a

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

benefits-qualifying "disability."[2]  (*PageID#s* 61-79).

The case is presently before the Court upon Plaintiff's Statement of Specific Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole. Plaintiff seeks an Order remanding this matter for benefits or, alternatively, further administrative proceedings.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    Background

### A.    Plaintiff's Profile and Testimony

On the date Plaintiff's claimed disability began, she was 42 years old.  The Social Security Administration therefore considered her to be a "younger person."  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3]  She has a 10th grade or "limited" education.  20 C.F.R. § 404.1564(b)(3).  Her past relevant work included jobs as a cashier and an assembler.

In the present case, Plaintiff focuses her contentions on the ALJ's decision concerning her mental work abilities and limitations.  During the ALJ's hearing, Plaintiff testified that her depression began in 2008 "and now it's just getting worse."  (*PageID#* 97).  Plaintiff indicated that she felt depressed because of her pain and cancer.  (*Id.*).  She experienced concentration deficits due to both pain and depression.  (*Id.*).  Plaintiff

---

[2] Plaintiff previously filed applications for benefits on June 4, 2007.  Those applications were ultimately granted in a decision by an ALJ dated April 5, 2010.  (*PageID##* 127-35).  Plaintiff was awarded a closed period of disability extending from February 15, 2007 until June 1, 2008 for residuals after breast cancer.  (*PageID#* 96).

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

2

testified that she did not like to be around people did not like to be in crowds.  (PageID#s 97-98).

Plaintiff also testified to suffering from anxiety.  She felt anxious trying to "get things done," like she did when she was younger.  She gets anxious when she can't get everything completed due to back pain.  (*PageID#* 98).  Plaintiff's boyfriend assisted her.  (*Id.*).  She performed a few light household chores such as dusting, cooking simple meals, and doing light loads of laundry.  (*PageID#s* 101-02).  She described herself as a "nervous person."  (*PageID#* 111).  She explained "I've always been that way and it's just, I get anxious and I don't know...."  *Id*.  Plaintiff did not have a driver's license because she was scared to drive.  (*PageID#* 92).

In 2007 and 2008, Plaintiff received mental-health counseling, but she stopped because she did not want to talk about the past.  (*PageID#* 99).  At the time of the hearing, Plaintiff took prescribed psychotropic medication.  (*PageID#* 98).

During a typical day, Plaintiff testified that she would watch television, sit, and she was always up and down.  (*PageID#s* 106, 111).  Plaintiff acknowledged that she had difficulty getting distracted and had trouble finishing things she started.  (*PageID#* 110).  Plaintiff also noted that she had difficulty dealing with stress; she gets upset and doesn't want to upset others.  (*PageID#* 111).  Plaintiff testified that she experienced headaches about every other day for which she took Vicodin.  (*PageID#* 112).  She easily forgets things.  (*PageID#* 115).

3

B.    **Medical Evidence**

The administrative record contains many medical records plus opinions from non-treating medical sources.  Plaintiff's contentions focus on the ALJ's decision regarding the opinions provided by psychologist Dr. Ward, who evaluated Plaintiff on one occasion at the request of the Ohio Bureau of Disability Determinations.  (*PageID*#s 529-34).

Dr. Ward evaluated Plaintiff in early December 2011.  He diagnosed her with Mood Disorder NOS and Generalized Anxiety Disorder.  (*PageID*# 533).

Dr. Ward did not specifically address Plaintiff's degree of mental-work limitations in the four broad functional areas described by Social Security Regulations.[4]  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 656 (6th Cir. 2009) (citation omitted).  Dr. Ward did, however, identify Plaintiff's limitations and abilities in the following areas: understanding, remembering and carrying out instructions; maintaining attention, concentration and persistence and pace to perform simple and multi-step tasks; maintaining attention and focus; engaging with co-workers and supervisors; maintaining emotional stability when presented with critical supervisory feedback; developing and maintaining appropriate co-worker relationships; and responding to work pressures that would lead to an increase in emotional instability.  (*PageID*# 534).  Dr. Ward opined, for example, that Plaintiff's short-term memory skills were below average, which may lead to difficulty remembering instructions; she displayed indications of distractions during the

---

[4] The B criteria for mental disorders is explained in the Regulations.  *See* Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00(A)-(C).

4

evaluation including requests to repeat questions; she presented as nervous and depressed during the evaluation, which may affect her level of engagement with co-workers and supervisors; and, she presented with emotional instability and anxiety when discussing past and current pressures.  (*PageID*#s 533-34).

## III.  <u>"Disability" Defined and the ALJ's Decision</u>

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Canfield applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2, ALJ Canfield concluded that Plaintiff had several impairments, namely, "degenerative disc disease of the lumbar spine, major depressive disorder, and generalized anxiety disorder."  (*PageID*# 68).

5

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listing sections 12.04, and 12.06.  (*PageID##* 71-72).

At Step 4, the ALJ concluded that Plaintiff could not perform her past relevant work.  The ALJ based this conclusion, in part, on his assessment of Plaintiff's mental residual functional capacity, *id*. at 76, which will be addressed below.

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.   Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

6

387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance... " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Plaintiff's Mental Residual Functional Capacity

The ALJ assessed Plaintiff's mental residual functional capacity to include the following limitations:

> [Plaintiff] is limited to performing simple, repetitive, routine tasks with no fast-paced duties, strict production quotas, more than simple work decisions, and only minimal changes in work setting. [Plaintiff] should have no more than occasional contact with the public, co-workers, and supervisors.

(*PageID* # 71).

Plaintiff contends that the ALJ's formulation of her mental residual functional capacity was not supported by substantial evidence. She reasons that the ALJ's decision

was internally inconsistent by, on the one hand, rejecting as speculative Dr. Ward's

opinions about her mental-work limitations while, on the other hand, inconsistently

claiming to account for those limitations.  This misreads the ALJ's decision.

At Step 4 of the sequential evaluation, the ALJ explained his assessment of

Plaintiff's mental residual functional capacity as follows:

> [T]he evidence of record does not establish disabling depression or
> anxiety.  At worst, the claimant experiences "moderate" limitation in her
> ability to maintain social functioning and "moderate" limitation in her ability
> to maintain concentration, persistence, or pace.  That level of psychological
> limitation has been addressed in the residual functional capacity set forth
> above.  Even Dr. Ward's conclusions concerning mental functioning
> limitations are, for the most part, speculative in nature (Exhibit 5F at 5-6[
> *PageID*# 533-34]).  He indicated only that the claimant's reported problems
> "**may** lead to difficulty." [emphasis added by ALJ].  In any event such
> limitations are described by Dr. Ward are well accounted for in the residual
> functional capacity assessment ....

(*PageID*# 75).

Although Plaintiff reads this as internally inconsistent, any inconsistency is

inconsequential due the alternative reasoning the ALJ employed.  As just seen, the ALJ

found that Dr. Ward's opinions were "speculative."  Assuming Plaintiff is correct that Dr.

Ward's opinions were not speculative, the ALJ's alternative reasoning negates the ALJ's

error.  The ALJ alternatively explained, "In any event such limitations as are described by

Dr. Ward are well accounted for in the residual functional capacity set forth above."  *Id*.

The disjunctive nature of these two findings is established by the ALJ's use of the phrase,

"In any event ...," when it is read in context.  The ALJ is essentially saying, "In any event

...," whether or not Dr. Ward's opinions were speculative, I am including his opinions in my assessment of Plaintiff's mental-work limitations. The internal inconsistency Plaintiffs sees here is inherent in – and negated by – the ALJ's alternative reasoning. As long as substantial evidence supports either reason, the inconsistency between them drops away.

The issue thus becomes, did the ALJ actually include Dr. Ward's opinions in his assessment of Plaintiff's mental residual functional capacity. The answer is yes.

Plaintiff bullet points seven opinions provided by Dr. Ward. Each opinion, however, matches squarely with one or more mental-work limitation found by the ALJ. This breaks down as follows:

- Dr. Ward opined that Plaintiff "may have difficulty understanding instructions due to below-average abstract reasoning skills."

- Dr. Ward opined that Plaintiff "may have difficulty remembering instructions due to below-average short-term memory skills."

- Dr. Ward opined that Plaintiff "demonstrated difficulty maintaining attention and focus, and demonstrated distraction resulting in inattention."

(Doc. #7, PageID# 733). The ALJ included these opinions in his assessment by limiting Plaintiff to "performing simple, repetitive, routine tasks..., and no ... more than simple work decisions."

Dr. Ward further opined that Plaintiff:

- "may become emotionally unstable when presented with critical supervisory feedback."

- "may have difficulty developing and maintaining appropriate coworker relationships."

9

- "became emotionally unstable and anxious when describing page and current pressures."

- "would have a compromised ability to respond to pressures and would experience a likelihood of agitation."

(Doc. #7, *PageID*# 734).

The ALJ included these opinions in his assessment by limiting Plaintiff to "no fast-paced duties, strict production quotas..., [and] no more than occasional contact with the public, co-workers, and supervisors."

The ALJ also properly considered the opinions of the state agency psychologists, Dr. Haskins and Dr. Finnerty. Each psychologist examined the evidence and based their evaluation on the impairments of affective disorder and anxiety disorders. (*PageID*## 141, 169). Dr. Haskins and Finnerty opined that Plaintiff's statements are partially credible. Plaintiff described reactions to stress as shaking and crying, she does not like crowds, has some memory and concentration problems, and sleep disturbance. Dr. Haskins and Finnerty found these difficulties to be consistent with Dr. Ward's report. (*PageID*# 143). Dr. Haskins and Finnerty found Plaintiff is able to complete simple, repetitive tasks; and to work in an environment without the need for close sustained focus/attention or sustained fast pace where she can work away from the distractions of other; to work in an environment where interactions with others is infrequent and superficial and changes are infrequent and easily explained. (*PageID*## 145-46, 172-74). Contrary to Plaintiff's arguments, the ALJ's assessment of Plaintiff's mental residual functional capacity was

10

consistent with the opinions of Drs. Haskins and Finnerty.  To the extent the psychologists of record suggested significant limitations, the ALJ's residual functional capacity assessment accommodated them.

Plaintiff argues that the ALJ's decision to accept the opinions of the state psychologists over those of the consulting psychologist runs afoul to the opinion issued by the Sixth Circuit in *Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365 (6th Cir. 2013).  The Sixth Circuit, in *Gayheart*, held in part that an ALJ commits reversible error by subjecting the opinions of a claimant's treating physicians to closer scrutiny than the opinions of state agency physicians.  *Gayheart*, 710 F.3d at 375-76.  The Court observed, the ALJ rejected the opinions of the plaintiff's treating physicians for alleged internal inconsistencies and for being inconsistent with the record as a whole while at the same time accepting the opinions of the state agency physicians that suffered from the same flaws.  (*Id.*)

The present case is distinguished from *Gayheart* on two significant grounds. First, the record does not contain an opinion provided by a treating physician or psychologist about Plaintiff's mental limitations and abilities.  Without such an opinion, ALJ Canfield did not scrutinize a treating-source opinion more closely than a non-treating source opinion.  Second, as discussed above, the ALJ incorporated Dr. Ward's central opinions into his assessment of Plaintiff's mental residual functional capacity.

Plaintiff also challenges the ALJ's hypothetical questions to the vocational expert.

She argues, "the ALJ's unsubstantiated notion that his MRFC [mental residual functional capacity] formulation 'accounted' for the opinion of Dr. Ward was an erroneous statement which lacked the support of substantial error [sic; presumably, 'evidence']." (Doc. #7, *PageID*# 739). She further contends that the ALJ's hypothetical questions to the vocational expert failed to adequately state what she could and could not do under Dr. Ward's opinion.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citations omitted).

For the reasons previously discussed, the ALJ's assessment of Plaintiff's mental residual functional capacity included Dr. Ward's opinions. Examining, moreover, the ALJ's hypothetical questions to the vocational expert, the ALJ posed hypothetical questions based on the mental work limitations he identified in his assessment of Plaintiff's residual functional capacity. Consequently, the ALJ's hypotheticals accurately portrayed Plaintiff's mental impairments based on his correctly formulated assessment of Plaintiff's mental residual functional capacity. The ALJ, therefore, properly relied on the vocational expert's responses to those questions. *See Gant v. Comm'r of Soc. Sec.*, 372 F.

App'x 582, 585 (6th Cir. 2010) (citing *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (stating that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical if the question accurately portrays the plaintiff's individual physical and mental impairments)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability determination be affirmed; and

2.     The case be terminated on the docket of this Court.

October 13, 2015

                                            _____s/Sharon L. Ovington_____
                                                   Sharon L. Ovington
                                    Chief United States Magistrate Judge

13

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).